IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL JOHNSON,                )
                                )
            Plaintiff,           )
                                )
      v.                         )      1:09CV954
                                )
CITY OF DURHAM, et al.,         )
                                )
            Defendants.          )

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommendation on Defendants' Motion to Dismiss Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Docket Entry 28) and Plaintiff's Motion for Judgement on the Pleadings (Docket Entry 25) (see Docket Entry dated Jan. 12, 2011; see also Fed. R. Civ. P. 72(b)(1)), as well as for rulings on a series of non-dispositive motions filed by Plaintiff (Docket Entries 23, 24, 27, 34-36, 40, 41, 47) (see Docket Entries dated Jan. 12 and Apr. 11, 2011; Fed. R. Civ. P. 72(a)). For the reasons that follow, Plaintiff's non-dispositive motions are all denied and it is recommended that the Court grant Defendants' Motion to Dismiss Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and deny Plaintiff's Motion for Judgement on the Pleadings.

BACKGROUND

This case began when Plaintiff filed a pro se Complaint pursuant to 42 U.S.C. § 1983, in which he alleged that the City of Durham and various city officials violated unspecified rights of his in connection with the enforcement of housing and/or building

codes from June through December 2009. (Docket Entry 1.) Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Docket Entry 5.) In that Motion, Defendants specifically raised, inter alia, the absence of allegations regarding any policy or custom of Defendant City of Durham and any culpable conduct by a number of the individual Defendants, as well as the existence of a state-law, inverse condemnation remedy and the individual Defendants' entitlement to qualified immunity. (See id. at 2; Docket Entry 6 at 5-8.) Plaintiff responded that he "answered" Defendants' dismissal motion by filing a Motion to Amend Complaint (Docket Entry 10), through which he sought leave to state "4th and 5th Amendment violations . . . in [an] Amended Complaint." (Docket Entry 9 at 2.)[1] In addition, Plaintiff filed a Motion for Supplemental Complaint in which he described an incident that allegedly occurred on January 29, 2010 (Docket Entry 11) and a "Supplemental Complaint" in which he set out allegations about events on February 19, 2010 (Docket Entry 17).

The Court (per the undersigned Magistrate Judge) granted Plaintiff's Motion to Amend Complaint (Docket Entry 10) and directed Plaintiff to file an Amended Complaint that "include[d] any and all claims he wishe[d] to present against Defendants, including any claims described in his original Complaint, his Motion for Supplemental Complaint, and his 'Supplemental

---

[1] Although Plaintiff's filings do not use standard capitalization conventions, for ease of reading, this Memorandum Opinion will apply such conventions when quoting from Plaintiff's filings.

Complaint.'" (Docket Entry 21 at 5-6.) The Memorandum Opinion that granted Plaintiff's request for leave to amend his Complaint specifically stated that, "[i]n drafting his amended complaint, Plaintiff would be well-advised to consider carefully the arguments presented by Defendants in their [earlier] filings that identif[ied] apparent, serious defects in Plaintiff's allegations . . . ." (Docket Entry 21 at 4.) In light of that disposition, it was recommended that the Court deny Defendants' Motion to Dismiss Complaint (Docket Entry 5) without prejudice to re-filing after Plaintiff filed his Amended Complaint. (Docket Entry 21 at 6.) The Court (per Chief Judge James A. Beaty, Jr.) adopted that recommendation. (See Docket Entry 49.)[2]

Plaintiff filed an Amended Complaint against Defendants City of Durham, Theodore L. Voorhess, Keith C. Chadwell, William V. Bell, Thomas J. Bonfiel, Cora McFadden, Diane Catotti, Howard Clement III, Farad Ali, J. Michael Woodard, Constance Stancil, Rick Hester, Stacy Crabtree, Burt Rauch, and Eugene A. Brown. (Docket Entry 26 at 1.) Viewed through the forgiving lens of liberal construction employed in connection with pro se pleadings, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), the Amended Complaint asserts the following claims:

1) Defendants violated the Fourth and Fifth Amendments to the United States Constitution by "tear[ing] the house down on 1010

---

[2] The Court (per Chief Judge Beaty) previously had denied preliminary injunctive relief because, inter alia, "it d[id] not appear that Plaintiff ha[d] stated any viable claim . . . ." (Docket Entry 15 at 3.)

-3-

Washington Street, Durham, North Carolina, without a 30 day notice . . . [in violation of North Carolina law and the] Durham City Code" (Docket Entry 26 at 9);[3]

2) Defendants City of Durham, Hester, Crabtree, and Rauch violated the Fourth and Fifth Amendments by trespassing at 1010 Washington Street on June 4, 2009 (id. at 8);[4] and

3) Defendant Rauch violated the Fourth and Fifth Amendments by trespassing at 1010 Washington Street on December 7, 2009 (id.).

Defendants thereafter moved to dismiss the Amended Complaint on November 10, 2010. (Docket Entry 28.) Plaintiff did not file a response (see Docket Entries dated Nov. 10, 2010, to present), but has filed a Motion for Judgement on the Pleadings that contains no argument or citation of authority (Docket Entry 25), as well as these non-dispositive motions:

1) "Motion for Joining Motions"/"Motion for Hearing before Trial" (Docket Entry 23);

2) "Motion for a More Definite Statement" (Docket Entry 24);

3) "Motion for a More Definite Statement" (Docket Entry 27);

4) "Motion Special Matters"/"Motion Definite Statement" (Docket Entry 34);

---

[3] The Amended Complaint also seeks punitive damages in connection with this claim because the failure to give proper notice involved "wicked and malice" conduct that caused Plaintiff "to panic and be afraid." (Docket Entry 26 at 10.)

[4] In addition, the Amended Complaint alleges that the other Defendants "comprisously [sic] permitted [Defendants Hester, Crabtree, and Rauch] to commit [that] trespass" (Docket Entry 26 at 3) and thus that Plaintiff has a claim under the Fourth Amendment against the other Defendants because they "capriciously permitted [Defendants Hester, Crabtree, and Rauch to] violate[] [Plaintiff's] 4th Amendment rights" (id. at 6).

-4-

5) "Motion for a More Definite Statement" (Docket Entry 35);

6) "Motion for Joining Motions"/"Motion for Hearing before Trial" (Docket Entry 36);

7) "Motion Hearing" (Docket Entry 40);

8) "Motion Waiving 12b(6) Motion to Dismiss by City of Durham" (Docket Entry 41); and

9) "Motion Admissions by City of Durham Defendants et al" (Docket Entry 47).

<u>DISCUSSION</u>

<u>Defendants' Motion to Dismiss Amended Complaint</u>

Defendants have moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 28.) Under said Rule, a complaint falls short if it does not "contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (emphasis added) (internal citations omitted) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions . . . [and] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>

"[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its

-5-

judicial experience and common sense." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). Moreover, although the United States Supreme Court has reiterated the importance of affording pro se litigants the benefit of liberal construction, Erickson, 551 U.S. at 94, the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint). Accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 129 S. Ct. at 1950, respectively)), cert. denied, 130 S. Ct. 2064 (2010).

*Claims against Defendants City of Durham, Voorhess, Chadwell, Bell, Bonfiel, McFadden, Catotti, Clement, Ali, Woodard, Stancil, and Brown*

The Amended Complaint lacks sufficient factual matter to state any claim(s) against Defendants City of Durham, Voorhess, Chadwell, Bell, Bonfiel, McFadden, Catotti, Clement, Ali, Woodard, Stancil, and Brown.

As to the claims against the City of Durham, "[a] municipality cannot be held liable under Section 1983 unless action pursuant to official municipal policy of some nature caused [the]

constitutional tort." Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). To establish liability against a municipality under Section 1983, a plaintiff therefore must show that "the constitutional injury is proximately caused by a written policy or ordinance, or by a widespread practice that is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" McFadyen v. Duke Univ., ___ F. Supp. 2d ___, ___, 2011 WL 1260207, at *50 (M.D.N.C. 2011) (Beaty, C.J.) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)). The Amended Complaint contains no such factual allegations. (See Docket Entry 26.)[5]

As to Defendants Voorhess, Chadwell, Bell, Bonfiel, McFadden, Catotti, Clement, Ali, Woodard, Stancil, and Brown, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution [or federal law]." Iqbal, 129 S. Ct. at 1948. Moreover, any claim against supervisory officials under Section 1983 requires a showing that "'(1) the supervisor had actual or

---

[5] This deficiency also forecloses any official-capacity claim against any individual defendant because "[s]uch a claim, in effect, is against the governmental entity employing [the official]." Nivens v. Gilchrist, 444 F.3d 237, 249 (4th Cir. 2006) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)); accord Gray v. Lewis, 51 F.3d 426, 431 (4th Cir. 1995). "[Because] the claims against the officers in their official capacities are claims against the entities for which the officers were acting . . ., it must be shown that the actions of the officers were unconstitutional and were taken pursuant to a custom or policy of the entity." Giancola v. State of W. Va. Dep't of Pub. Safety, 830 F.2d 547, 550 (4th Cir. 1987) (citing Monell, 436 U.S. at 690-92) (emphasis added); accord Gordon v. Kidd, 971 F.2d 1087, 1097 (4th Cir. 1992).

-7-

constructive knowledge that his subordinate was engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) there was an "affirmative causal link" between the supervisor's inaction and the particular injury suffered by the plaintiff.'" McFadyen, ___ F. Supp. 2d at ___, 2011 WL 1260207, at *57 (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal ellipses omitted)). The Amended Complaint does not allege any facts showing any personal involvement by any of these Defendants in any alleged unlawful activity or establishing any of the elements of supervisory liability. (See Docket Entry 26.)

All of Plaintiff's claims against Defendants City of Durham, Voorhess, Chadwell, Bell, Bonfiel, McFadden, Catotti, Clement, Ali, Woodard, Stancil, and Brown, therefore, fail as a matter of law.

*Claim for Demolition of House*

The Amended Complaint identifies only Defendant Hester as having played a role (direct or supervisory) in "tear[ing] the house down on 1010 Washington Street without a 30 day notice . . . [in violation of North Carolina law and the] Durham City Code." (Id. at 9.) Accordingly, to the extent the Amended Complaint seeks to hold Defendants Crabtree and Rauch liable for that conduct, it fails to state a claim. See Iqbal, 129 S. Ct. at 1948 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant,

-8-

through the official's own individual actions, has violated the Constitution [or federal law]."); McFadyen, ___ F. Supp. 2d at ___, 2011 WL 1260207, at *57 (quoting requirements for supervisory liability set out in Shaw, 13 F.3d at 799). Further, as to Defendant Hester (and, as an alternative ground for dismissal for all other Defendants), this claim fails as a matter of law because Plaintiff has "an adequate and meaningful postdeprivation remedy in the form of an action for inverse condemnation in state court." Yates v. Jamison, 782 F.2d 1182, 1185 (4th Cir. 1986) (ordering dismissal of Section 1983 case brought by property-owners against North Carolina city and its officials based on alleged destruction of house without notice required by North Carolina law).

The Court, therefore, should dismiss Plaintiff's Section 1983 claim regarding demolition of the house at 1010 Washington Street.

*Claims for Trespass*

Defendants have asserted the defense of qualified immunity as a basis for dismissal of all claims against the individual Defendants. (See Docket Entry 28 at 3; Docket Entry 29 at 7.) The Amended Complaint alleges that federal constitutional violations occurred when Defendants Hester, Crabtree, and Rauch trespassed at 1010 Washington Street, on June 4, 2009, and Defendant Rauch trespassed there on December 7, 2009. (Docket Entry 26 at 8.) In light of the assertion of qualified immunity, the Court must determine whether, on the date(s) in question, "it would [have] be[en] clear to a reasonable [official] that [his or her] conduct was unlawful in the situation he [or she] confronted." Saucier v.

-9-

Katz, 533 U.S. 194, 202 (2001). See also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (holding that government officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); McVey v. Stacy, 157 F.3d 271, 277 (4th Cir. 1998) ("When determining whether a reasonable officer would have been aware of a constitutional right, we do not impose on the official a duty to sort out conflicting decisions or to resolve subtle or open issues.").

"A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits." Siegert v. Gilley, 500 U.S. 226, 232 (1991); see also Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (recognizing that qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation" (emphasis added)). In this case, Plaintiff has not come forward with sufficient allegations to permit a finding that Defendants Hester, Crabtree, and Rauch violated Plaintiff's clearly-established constitutional rights on June 4 and/or December 7, 2009.

According to the Amended Complaint:

On June 4, 2009, Defendants Hester, Crabtree, and Rauch trespassed at 1010 Washington Street ("which was 'posted' in a manner reasonably likely to come to the attention of anyone who would approach the front entry"), when they "knock[ed] loudly at the front door[,] . . . stated that they were city inspectors investigating a complaint and requested that they be let in 'now,' . . . [such that an occupant] let[] [them] inside the house." (Docket Entry 26 at 3-4; accord id. at 11.)[6] In addition, "[Defendant] Rauch and a demolition team [trespassed] on December 7, 2009 [by] conducting a walk around of 1010 Washington Street . . . [and] proceed[ing] to conduct a visual inspection of the crawl space of the property." (Id. at 4-5.) They accomplished that inspection by "opening up [a] rear acess [sic]," after which Plaintiff "confront[ed] [Defendant] Rauch . . . and ask[ed] whats [sic] up now" to which Defendant Rauch "replie[d] its [sic] coming down [Plaintiff] we are gonna [sic] bulldoze the house down." (Id. at 14-15; accord id. at 5 (stating that when Plaintiff "arrive[d] at 1010 Washington Street [he] was immediately informed by [Defendant] Rauch that 1010 Washington Street ha[d] been scheduled for demolition").) Plaintiff "then asked [Defendant] Rauch and his demolition team to get the hell off of the property." (Id. at 15.)

---

[6] After entering, Defendants Hester, Crabtree, and Rauch "walked inside the kitchen and the bathroom and proceeded out the door." (Docket Entry 26 at 11.) Plaintiff arrived in time to see Defendants Hester, Crabtree, and Rauch "leaving off [the] front porch . . . [and] walk[ing] around the corner to there [sic] City of Durham vehicles . . . ." (Id. at 12-13.)

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against <u>unreasonable searches and seizures</u>' by the government or its agents." <u>United States v. Seidman</u>, 156 F.3d 542, 547 (4th Cir. 1998) (quoting U.S. Const. amend. IV) (emphasis added).[7] "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." <u>United States v. Jacobsen</u>, 466 U.S. 109, 113 (1984). "[T]ranslation of the abstract prohibition against 'unreasonable searches and seizures' into workable guidelines for the decision of particular cases is a difficult task . . . . Nevertheless, one governing principle . . . has consistently been followed: except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." <u>Camara v. Municipal Ct. of City & Cnty. of San Francisco</u>, 387 U.S. 525, 528-29 (1967).

"[A] search of one's home or its curtilage, effected as a result of a trespass, is an encroachment on a person's expectancy of privacy and is for that reason, but not because of the trespass, a violation of the Fourth Amendment if not based on probable cause

---

[7] "The basic purpose of this Amendment, as recognized in countless decisions of th[e] [Supreme] Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. The Fourth Amendment thus gives concrete expression to a right of the people which is basic to a free society. As such, the Fourth Amendment is enforceable against the States through the Fourteenth Amendment." <u>Camara v. Municipal Ct. of City & Cnty. of San Francisco</u>, 387 U.S. 523, 528 (1967). The undersigned Magistrate Judge is not aware of any theory by which the Fifth Amendment might bear upon Plaintiff's "trespass" claims.

-12-

or authorized by a search warrant." United States v. Jackson, 585 F.2d 653, 660 (4th Cir. 1978). "[A] routine inspection of the physical condition of private property is a less hostile intrusion than the typical policeman's search for the fruits and instrumentalities of crime," id. at 530, but the Supreme Court nonetheless has held:

> that administrative searches of [private property] . . . are significant intrusions upon the interests protected by the Fourth Amendment, that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual, and that the [the public interest in enforcement of minimum fire, housing, and sanitation standards is] insufficient to justify so substantial a weakening of the Fourth Amendment's protections [as relaxation of the warrant requirement].

Id. at 533. Accordingly, absent an "emergency demanding immediate access . . . [the Fourth Amendment requires] that the inspectors [responsible for enforcing administrative property regulations] obtain a warrant to search [private property] . . . ." Id. at 540.

As to the incident on June 4, 2009, assuming that their alleged acts of "knock[ing] loudly," identifying themselves as "city inspectors investigating a complaint," and "request[ing] that they be let in 'now'" (Docket Entry 26 at 3-4) otherwise would have rendered the entry by Defendants Hester, Crabtree, and Rauch non-consensual,[8] Plaintiff's claim fails as a matter of law, because

---

[8] "It is well established that a search occurs for Fourth Amendment purposes 'when officers gain visual or physical access to a room after an occupant opens the door not voluntarily, but in response to a demand under color of authority.'" United States v. Mowatt, 513 F.3d 395, 400 (4th Cir. 2008) (quoting United States v. Conner, 127 F.3d 663, 666 (8th Cir. 1997)) (internal ellipses omitted), abrogated on other grounds, Kentucky v. King, 131 S. Ct. 1849
(continued...)

-13-

his original Complaint conceded that Plaintiff had agreed to an inspection on that date <u>and</u> that the City of Durham had obtained a search warrant (<u>see</u> Docket Entry 1 at 2-3). <u>See</u> <u>Bright v. QSP, Inc.</u>, 20 F.3d 1300, 1305 (4th Cir. 1994) (noting that "admissions in the pleadings are binding" (internal quotation marks omitted)).[9] Plaintiff's claim against Defendant Hester regarding the events of December 7, 2009, also falls short. Assuming that Plaintiff has a reasonable expectation of privacy in the crawl-space beneath 1010 Washington Street,[10] the Amended Complaint alleges an insufficient

---

[8](...continued)
(2011) (ruling that knocking on door loudly and announcing status as police officers did not amount to "demand" for entry); but see United States v. Cephas, 254 F.3d 488, 493 (4th Cir. 2001) ("A voluntary response to an officer's knock at the front door of a dwelling does not generally implicate the Fourth Amendment, and thus an officer generally does not need probable cause or reasonable suspicion to justify knocking on the door and then making verbal inquiry."); United States v. Taylor, 90 F.3d 903, 909 (4th Cir. 1996) ("Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned violation of the person's right of privacy, for any one openly and peaceably to walk up the steps and knock on the front door of any man's castle whether the questioner be a pollster, a salesman, or an officer of the law." (internal ellipses and quotation marks omitted)).

[9] Plaintiff's Amended Complaint does not explicitly contradict those admissions from his original Complaint. (See Docket Entry 26.) Nor has Plaintiff offered any argument that he made those earlier admissions by mistake and that they are untrue; indeed, as noted in the Background section, supra, p. 4, Plaintiff did not even respond to Defendants' Motion to Dismiss Amended Complaint. Under these circumstances, Plaintiff remains bound by his prior admissions. See New Amsterdam Casualty Co. v. Waller, 323 F.2d 20, 24 (4th Cir. 1963) (delimiting when court may relieve party of admissions in pleadings).

[10] "At common law, the curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life and therefore has been considered part of home itself for Fourth Amendment purposes. Thus, courts have extended Fourth Amendment protection to the curtilage; and they have defined the curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." Oliver v. United States, 466 U.S. 170, 180 (1984) (internal citation and
(continued...)

-14-

intrusion upon such interests to permit a finding that Defendant Hester violated a clearly established right under the Fourth Amendment. Defendant Hester's assertion of qualified immunity thus defeats this claim as a matter of law.

In evaluating whether a Fourth Amendment violation occurred, the Supreme Court has taken into account the fact that the challenged government conduct "could, at most, have only a de minimis impact on any protected property interest." Jacobsen, 466 U.S. at 125. Moreover, the Fourth Circuit has held that a government agent's act of "opening [an] unlocked door and stepping inside, without a warrant [or other lawful authority] . . . was at worst a minor and technical invasion of [the resident's] rights." Seidman, 156 F.3d at 547-49. Simply put, "the Fourth Amendment cannot be stretched to bar categorically all government breaches of the curtilage. [Some] invasions implicate the law of trespass, but not necessarily the Fourth Amendment." Widgren v. Maple Grove Twp., 429 F.3d 575, 585 (6th Cir. 2005).

To measure the reach of the Fourth Amendment in such situations, courts consider it "highly significant [whether] the purpose of government intrusion [that took place] was an administrative, not criminal, inspection." Id. Defendant Hester's

---

¹⁰(...continued)
quotation marks omitted); see also United States v. Romero-Bustamente, 337 F.3d 1104, 1108 & n.4 (9th Cir. 2003) (citing Oliver in reaffirming view that crawl-space beneath house constitutes "part of the dwelling, and thus a warrant, or some reason for a search without a warrant, was necessary" for search of crawl-space (internal quotation marks omitted)); United States v. Van Dyke, 643 F.2d 992, 993 n.1 (4th Cir. 1981) (quoting with approval definition of "curtilage" as "'an area of domestic use immediately surrounding a dwelling and usually but not always fenced in with a dwelling").

alleged opening of the crawl-space door and peering within was not part of a criminal investigation. Indeed, the purported actions by Defendant Hester lacked even any administrative enforcement purpose, as reflected by the admission in the Amended Complaint (documented above, <u>supra</u>, p. 11) that the decision to demolish the structure at 1010 Washington Street already then had been made.

In concluding that the allegations in the Amended Complaint fail to show that Defendant Hester violated a clearly established right under the Fourth Amendment on December 7, 2009, the undersigned Magistrate Judge finds persuasive a decision by the United States Court of Appeals for the Tenth Circuit affirming the dismissal of a Section 1983 claim under similar circumstances. <u>Artes-Roy v. City of Aspen</u>, 31 F.3d 958, 962-63 (10th Cir. 1994) ("[W]e assume [the city official] pushed open the door to the premises and stepped into the entryway without any proper consent. [He] was not on the premises to inspect for a violation of the building code; he and the inspector had already seen what they considered violations . . . . It seems clear [the city official] did not intend to make any arrest on the premises . . . . Thus, [he] did not enter plaintiff's home for either a search or a seizure. We need not in this appeal determine whether an officer's warrantless entry without consent into a private residence can never violate the Fourth Amendment if the official intends no search or seizure . . . [because here the] intrusion was minimal . . . . In these circumstances, we hold there was no Fourth Amendment violation."); <u>see also</u> <u>Ingraham v. Wright</u>, 430 U.S. 651,

674 (1977) ("There is, of course a de minimis level of imposition with which the Constitution is not concerned."); Hessel v. O'Hearn, 977 F.2d 299, 303 (7th Cir. 1992) ("[I]f a loss is not only small but also indefinite, so that substantial resources would have to be devoted to determining whether there was any loss at all, courts will invoke the de minimis doctrine and dismiss the case, even if it is a constitutional case.").

In sum, the Amended Complaint fails to state a claim against Defendants Hester, Crabtree, and Rauch regarding the events of June 4 and/or December 7, 2009.

### Plaintiff's Pending Motions

None of Plaintiff's pending motions have any merit:

1) no need exists to join any motions or to conduct a hearing, as Plaintiff has requested (see Docket Entries 23, 36, 40);

2) Defendants have not filed an answer or other pleading under Federal Rule of Civil Procedure 7(a) and thus Plaintiff has no right to a more definite statement under Federal Rule of Civil Procedure 12(e), as he asserts (see Docket Entries 24, 27, 34, 35);

3) Plaintiff's conclusory, unsupported Motion for Judgment on the Pleadings (Docket Entry 25) does not address the deficiencies that warrant granting Defendants' Motion to Dismiss Amended Complaint and provides no basis to enter judgment in his favor;

4) Plaintiff's "Motion Special Matters" (Docket Entry 34) simply asserts that Defendants should not have torn down the structure at 1010 Washington Street after he instituted this action, but that assertion fails in light of the Court's prior

-17-

denial of preliminary equitable relief and the conclusion herein that his Amended Complaint lacks merit;

5) Defendants did not waive the right to move for dismissal under Federal Rule of Civil Procedure 12(b)(6), as Plaintiff suggests (see Docket Entry 41), but timely filed such a motion; and

6) given that Defendants moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), the Court neither has set a scheduling conference nor entered a scheduling order and thus Plaintiff lacks any entitlement to pursue discovery, as he proposes (see Docket Entry 47).

## CONCLUSION

Plaintiff's pending motions all lack merit and his Amended Complaint fails to state a claim under Rule 12(b)(6). This latter failure comes after (as detailed in the Background section, supra, pp. 2-3) Plaintiff had received a prior warning to address the specific deficiencies that still persist.

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion to Dismiss Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Docket Entry 28) be **GRANTED**, that Plaintiff's Motion for Judgement on the Pleadings (Docket Entry 25) be **DENIED**, and that this action be **DISMISSED WITH PREJUDICE**.

**IT IS ORDERED** that all of Plaintiff's other pending motions (Docket Entries 23, 24, 27, 34-36, 40, 41, 47) are **DENIED**.

                                        /s/ L. Patrick Auld
                                            **L. Patrick Auld**
                             **United States Magistrate Judge**
September 30, 2011